# RECORD NUMBER: 21-2525

===========================================================

### IN THE
### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

### Haidong LI
### Appellant

v.

### Alibaba Group Holdings, Ltd.
### Appellees

# <u>APPELLANTS' OPENING BRIEF</u>

Ning Ye，Esq.
Law Office of Ning Ye, Esq.
For the Appellants
135-11 38th Avenue, Suite 1A
Flushing, NY 11354
Tel.(718)308-6626
Fax：（718）228-5816
Email: yeningusa@gmail.com

Stephen Patrick Blake, Esq., et al
Simpson Thatcher & Bartlett, LLP.
For the Appellees
2475 Hanover Street
Palo Alto, CA 94304
Tel.： (650)251-5153
Fax：（650）251-5002
Email.:sblake@stblaw.com

1

## **TABLE OF CONTENTS**

Titles:                                                    Page Number:

1. Disclosure of Corporate Interests                            5

2 Disclosure Of Interested Parties                              6

3. Statement Of Jurisdiction                                    7

4. Statement Of The Issues                                      7

5. Statement of Facts                                           8

6. Statement of Case                                           10

7. Standard Of Judicial Review                                 16

8. Argument                                                    17
8.1 Summary of Arguments                                       17

Argument I: District Court's Failure to Address Defendants' Motion to Dismiss
Pursuant to Rule 12(b)(6) Rendered The Court's Pre-Injunction Ban on Plaintiff's
Having His Merits Heard in other Courts which Do have Jurisdiction            17

Argument II: District Court Does Have Subject Matter Jurisdiction. Even if it
Does Not, The Dismissal Without Prejudice Addressing Rule 12(b)(1) issues
Should Not be Attached with A Ban On Plaintiffs' Post-Dismissal Case Filing        18

Argument III: District Court Does Have Personal Jurisdiction. Even if it Does
Not, The Dismissal Without Prejudice Addressing Rule 12(b)(2) Issues Should
Not be Attached with A Ban On Plaintiffs' Post-Dismissal Case Filing            24

Argument IV: Personal Jurisdiction in E-Commerce Environment            27

Argument V. District Court's Refusal to Consider Plaintiff's Opposition
Memorandum In Connection to Issuance of a Universal Ban for Further Efforts
to Seek for Justice May Have Violated Plaintiff's Due Process Rights            33

9. Conclusion                                                  35

10. Certificate of Compliance                                  36

11. Certificate of Service                                     37

# TABLE OF AUTHORITIES

**Cases, Precedents and Authorities:**                                    Page Number:

Walden v. Fiore, 571 U.S. 277, 284 (2014)                                15

Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)"                          15

Gross v. FBL Fin. Servs., Inc., <u>557 U.S. 167, 173-74</u> (2009)       16

Ginger v. District of Columbia, <u>527 F.3d 1340, 1345</u> (D.C. Cir. 2008)  16

Corfield v. Dallas Glen Hills LLP, 355 F.3d 853, 857 (5th Cir. 2003)     16

*Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)                      16

*Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001).                    16

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., <u>241 F.3d 135</u>, 150-51
<u>(2d Cir. 2001)</u>                                                    17

Filetech S.A. v. Fr. Telecom S.A., <u>157 F.3d 922</u>, 930 (<u>2d Cir. 1998</u>)).  17

TRACY v. FRESHWATER 08-1769-cv. 2nd. Cir., 2010                          17

Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 427
(2d Cir.2009)                                                            17

Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir.2007)             17

Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir.2009)      17

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.2007)      17

*cf. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506 (2001)*  18

Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm.
of Adjustment, Cent. Region, 558 U.S. 67 (2009)                          19

Bell v. Hood, 327 U.S. 678, 681-85 (1946)                                19

Payne v. Progressive Financial Services, Inc., 748 F.3d 605, 608(5th Cir2014)  19

In re Great Lakes Dredge & Dock Co., LLC, 624 F.3d 201, 209 (5th Cir.2010)  20

Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc., 544 Fed. Appx. 455
(5th Cir. 2013)                                                          20

Payne v. Progressive Financial Services, Inc.,748 F.3d 605,608(5th Cir.2014)  20

Montgomery v. Comey, 752 Fed. App'x 3, 5 (D.C. Cir. 2019).               24

O'Donnell v. Barry, 148 F.3d 1126, n.3 (D.C. Cir. 1998)                  24

Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 623 n.2 (5th Cir. 1999)       25

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)                 25

Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994)       25

*L.L. Bean v. Gator.Com*, 2003 DJDAR 10023 (9th Cir. 2003)               28

*International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)     28

*Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 404 (9th Cir. 1997)       29

*L.L.* Bean *v. Gator.Com*, 2003 DJDAR 10023                            29

McGill *Technology Ltd. v. Gourmet Technologies, Incl,*300 F.Supp.2d 501

(E.D. Mich. 2004)                                                                    29
*Mink v. AAAA Development LLC.,* 190 F.3d 333 (5th Cir. 1999)                        29
 *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945).               29
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)                               29
*Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408 (1984).           29
*Zippo Manufacturing v. Zippo Dot Com,* 952 F.Supp.2d 1119 (W.D.Pa.1997)   29/30
*American Network Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp.
494 (S.D.N.Y. 1997)                                                                 32
*Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996).              32
*Inset Systems Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D. Conn. 1996)      33
Feltzin v. Stone Equities, LLC, CV 16-6457 (SJF) (AKT), 2018 WL 1115135
at *7 (E.D.N.Y. Feb. 8, 2018)"                                                      33
*Lujon v. Nat'l Wildlife Fed'n*, 498 U.S. 871, 896 (1990).                          34
*Kimberg v. Univ. of Scranton*, 411 Fed. Appox. 473, 477 (3rd Cir. 2010)           34
*Petrocelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3rd Cir. 1995)          34
Marchant v. Pennsylvania R.R., 153 U.S. 380, 386 (1894)                             34
Hagar v. Reclamation Dist., 111 U.S. 701, 708 (1884).                               34
Accord, Hurtado v. California, 110 U.S. 516, 537 (1884)                             34
Medina v. California 505 U.S. 437, 443 (1992)                                       35
Montgomery v. Comey, 752 F. App'x 3, 5 (D.C. Cir. 2019) (per curiam)                35

## Const. Statutes, Regulations:

United States Constitution, Article III (1783)                                       7
28 USC  § 1291.                                                                      7
28 U.S.C.  § 1294                                                                    7
15 U.S.C. § 7001, (Doc 34, App15/16)                                                15
Fed.R.Civ.P. 56(c)(2)                                                               17
15 U.S.C. § 7001                                                                    20
Federal Electronic Signatures in Global and National Commerce Act              21/22
Fair Credit Reporting Act, 15 U.S.C. § 1681n(a)                                     23
Rule 12(b) motion. FED. R. CIV. P. 12(h)(1)                                         25
Rule 6(b)(1)(B)                                                                     34

## Academic Treatises:

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure
§ 1357 (2d ed. 1990)).                                                              24

1.  STATEMENT OF DISCLOSURE OF CORPORATE INTERESTS

This undersigned counsel for the Appellant Haidong Li, hereby solemnly states and discloses under the penalty of perjury, that this undersigned does not have any preexisting, existing, or potential corporate affiliation, interactions of interests, with any corporate entities, corporate America, or corporate Wall Street, or with all its kind, sort or like, in and out of the United.

Respectfully submitted:

_____

/s/Ning Ye, Esquire
Counsel for the Appellant

2.  <u>DISCLOSURE OF INTERESTED PARTIES</u>

The Following parties may have interests from the outcome of this instant case:

Haidong Li, the Appellant;

Ning Ye, Esq. Counsel for the Appellant (limited to fees only)

Alibaba Group Holding Ltd., Appellee

Jack Ma aka, Yun Ma, Appellee

The Politburo of the Chinese Communist Party (CCP), the Ultimate Handler of Appellees

All Defense Counsels for Appellees

Respectfully submitted by:

_____
/s/Ning Ye, Esquire
Counsel for the Appellant

3. **STATEMENT OF JURISDICTION**

This Honorable Court of Appeals has appellate jurisdiction to review a final disposition of the U.S. District Court for Southern District of New York pursuant to 28 USC § 1291. Venue is proper pursuant to 28 U.S.C. § 1294. This Appellate Jurisdiction is also based upon United States Constitution, Article III (1783)

Article III of the United States Constitution extends the federal judicial power to "all Cases … between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const., art. III, § 2, cl. 1. To effectuate this power, the United States Judicial Code provides diversity jurisdiction over any civil action arising between "a foreign state … as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a)(4) (1982).Diversity of Citizenship. (Doc 1, Section 22, Trial Court Doc. 2 p8)

4. **Statement of Issues**

Whether the District Court's permanent, universal bar to ban the Appellant from bringing legal actions against the same appellees a reversible error?

Whether the District Court's granting Defendants' Motion to Dismiss the Complaint primarily upon "Subject Matter Jurisdiction" or want thereof pursuant to Rule 12(b)(1) is a Dismissal without Prejudice?

Does Federal Electronic Signatures in Global and National Commerce Act governing protection of E-Commerce Consumers deny or rip off US District Court's subject matter jurisdiction when E-Commerce consumers are victimized in E-Commerce Frauds and seek for judicial remedies in the U.S. District Court?

In absence of quoting Rule 12(b)(6), Whether the District Court's granting Defendants' Motion to Dismiss the Complaint primarily upon "Personal Jurisdiction" or want thereof pursuant to Rule 12(b)(2) is a Dismissal without Prejudice?

7

What if Defendants' denial of the trial court's personal jurisdiction was prevailed by "frauds upon the Court" and/or willful misrepresentation contrary to well established factual proof?

Has Procedural Due Process been violated in this Instant case?

**5.** <u>**Statement of Facts**</u>

Appellant Haidong Li is a national of the United States of ethnic Chinese origin. App28 He was a merchant purchasing various merchandise from Appellees Alibaba and its subsidiaries such as T-Mall, in and out of the United States by internet, in response to Appellee Alibaba's globally circulated advertisement, through both internet advertising and hard paper advertisement, including billboard and merchant signs situated through out the United States, including, but not limited to, the State of New York. (Appellant's Appendix Appendix, hereinafter App 76/79). Appellant was also induced by Appellee Alibaba's misleading advertisements in and out of the United States by registering himself as the registrant by depositing large amount of cash in Alibaba's aggressive eBanking arm, Alipay, App 76, for the purpose to pay his eCommerce transaction with Appellees and ending up finding large amount of his cash deposits in the Alipay accounts had either been messed up or locked, with no freedom to have the remaining cash withdrawn. App37/38

Appellant asserted that he "opened [a] factory" and created digital storefronts on Tmall to buy and sell shoes and furniture. App31 He took these business steps in reliance upon public advertisement made by Alibaba and its subsidiaries that they would "build" a "quality" online "mall;" would "support mid-and small sized online merchants;" and Appellees publicly vowed to police counterfeit merchandise sold on their various platforms. App31 Appellant pleads he found "it was really difficult to sell products online" and that, for many sellers on Tmall, business was "not profitable"—although Li does not say that his business was one of these non-profitable sellers. App 32 Appellant

8

also says that Alibaba "did not [] support" smaller merchants like him. App 32 At some point in time, Tmall induced inflow of the e-Customers by falsely announcing that if one of its customers purchased "counterfeit goods" on its platform, the purchaser would be refunded five times the purchase price. App 33Appellant said he had believed such "a blank check . . ." which appeared "too good to be true," he set up multiple accounts and placed around 200 orders for "fake products" in hopes of collecting refunds five times the amount he spent on the fake products, App 34-35 After Li engaged in "painstaking discussion[s]" with Alibaba customer service over his purchases, Alibaba froze Li's accounts, including those Li made on Alibaba's digital payment platform. App 36 Appellant filed "several litigations" in courts in China against the China's CCP Politburo backed Alibaba over his grieves of being defrauded and money locked.   The corrupted CCP manipulated "people's court" systems rendered all his suits lost he pleads in the underlined action.   The fact that Appellant Li "lost his litigations" in totally corrupted and manipulated totalitarian China's "People's Courts" lining up with communist red novel rich Jack Ma and Alibaba, and their un-transparent handlers standing behind Ma was not the end of the world and the fact that Appellant was ordered to pay "hefty sanctions." App 39   was the only proof of his having exhausted his local remedy before he brought the litigation in the court of the United States, which, like him, is the greatest victim of the Appellees' aggressive invasion in the areas of eCommerce and eBanking.   .

Alibaba is a CCP Politburo backed international e-commerce and technology conglomerate created inclusion with then communist China's maximum leader Jiang Zemin's family, and whose e-Commerce empire involved several family members of red China's politburo/standing committee members. It was also Chinese top communist handler's off-shore money laundering apparatus therefore it was incorporated under Cayman Islands law and with a principal place of business in China. (Doc. 18 ("FAC") ¶¶ 23– 24; Doc. 15 ("Kaplan Decl.") Ex. A.)   Counsels for the Appellees falsely

represented to the Court in half-way truth that Alibaba does "not sell directly to customers," but operates a "third-party platform business model"—it connects third-party merchants who open digital storefronts on its various platforms to customers. (FAC ¶¶ 3, 6; Kaplan Decl. Ex. A at 4.) One of these platforms is Tmall.com ("Tmall"). Tmall is operated by an indirect subsidiary of Alibaba, unlike e-commerce companies like Amazon, they argued. App 73

## 6. <u>Statement of Case</u>

The nature of the action of the underlying case with the U.S. District Court for Southern District of New York is an action seeking for damages from Defendant Alibaba Group Holding LTD (hereinafter "Alibaba"), et al, for the latters' E-commerce frauds (including eBanking frauds), and Conversion through repressive monopoly in e-Commerce, in violation of several Federal Laws including E-signature frauds, breach of contract and foreign corruption act, etc. Defendant argued foremost, among others, that U.S. Courts have no jurisdiction because the only jurisdictional contact for Defendant Alibaba and its subsidiaries in the U.S. is the Company stocks are transacted through U.S. Stock market, App 73-74, citing a lot of legal authorities addressing the mere existence of a foreign company's entry into the U.S. stock market does not render a U.S. Court's jurisdictional basis. App 82 The District Court supported the Defendant's argument, finding, among others, the Court does not have jurisdiction over the matter because Alibaba, as a foreign corporation, does not have nexus for the Court to exercise federal jurisdiction, because it transacts business outside the United States. App 16 As Defendants-Appellees also admitted that the trial court's dismissal was based upon the finding of "lack of Jurisdiction" ("As the District Court held in dismissing the suit for lack of jurisdiction…" ("Appellee's Motion for Summary Affirmance"，Doc 13，p5) During the pendency of the case with the District Court, Plaintiff found in shock that Defendant's State mobilized grand conspiracy E-Banking transaction using Chinese currency RMB as the legal tender

through its powerful E-payment engine, namely. "Alipay", directly under Alibaba, which was designed and devised to overthrow the predominance of the US dollar system in American economy has been over-flooding in and out of the New York retail tangible supermarkets. Alibaba's physical presence in such New York supermarket as Walgreen: tangible AliPay RMB transaction debt card machine, as the unique representative of the Alibaba, was caught and evidence was taken. App 75/79/80 That revelation has demonstrated that Defendant Alibaba had fraudulently concealed such material facts to the Court in order to get the summary dismissal for lack of the Defendants' U.S. business transactions ion the forum state, as an apparent fraud upon the Court. Plaintiff submitted overwhelming evidence on the final phase of the trial level evidence (newly discovered evidence in rebuttal to lack of U.S. nexus submitted and entered into the docket of the District Court), seeking for leave of the Court to file Amended Complaint, or alternatively, file a Complaint in the State Court, following the trial court's restricted permission to move for leave of the Court. Appellant's Motion for Leave of the Court was filed strictly followed the Court's Instruction with the "Pro se" Clerk. App 20    The Trial Court rejected the Motion for the Leave, for a small technical reason. The trial Court's final strike by imposing a universal ban on Plaintiff's challenge against Defendant in judicial activism extending full scale protection to such international RMB e-Pay monopoly in global advocacy of People's Republic of China's currency, U.S. Dollar substitute, has blocked any path through which Plaintiff may seek for justice as of his rights under due process. He was left no options, but to appeal with this Hon. Court The District Court's final Disposition to Dismiss Plaintiff's 1st Amended Complaint (FAC) with the Court's erroneous finding in want of subject matter jurisdiction and personal jurisdiction, without inquisition or investigative hearing, not even "considering" opposition memorandumApp13, during the pending period when the Plaintiff's Opposition Memorandum was resting on the Judge's desk, on September 7, 2021 appears

incomplete and deficient. The Defendants Motion to Dismiss on Rule 12(b)(1), lack of subject matter jurisdiction, App 88 12(b)(2), lack of personal jurisdiction, App 90 12(b)(3), Venue Improper, and 12(b)(6), Failure to State a Cause, (Doc 24) App 101 was not fully addressed in the District Court's 09/07/2021 Order and Memorandum Opinion (Doc 34).App10/11    The District Court failed in addressing, hence failed to rule on, the merits and substance of the FAC, by having completely failed to address the Rule 12(b)(6) issues being raised in Defendants' Motion to Dismiss (Doc 24) and Plaintiff's Opposition Memo(Doc 29, 30 and 33), among other fatalities.

Consequently, the District Court's 09/07/2021 Decision was NOT a Decision on merits of the case.    It should be deemed as a Dismissal without Prejudice.    If it is a Dismissal without prejudice, *i.e.,* without addressing the merits of the calim, the Court's ban by pre-injunction to file 2nd Amended Complaint, is a reversible error. Because District Court's dismissal by Rule 12(b)(1) and 12(b)(2), without addressing the Motion's Rule 12(b)(6) issues, should be a Dismissal without prejudice. This case must be remanded for the District Court to rehear the case. *

Starting May 30, 2018, given to exhaustion of local judicial remedy in communist China, Appellant Haidong Li retained a law firm in Flushing, New York, namely, King Wu and

---

*With a slip of eyes, the District Court's such fatality of error in failing to address the Rule 12(b)(6) issues may be overlooked. Appellees took the chance to raise their Motion for Summary Affirmance with this Court (Appellate Doc 13). With hearty appreciation for the Honorable Court's finding of the fatal errors in the District Court's 09/07/2021 Decision ahead of all parties, Appellees' motion was partially "denied regarding Appellant's filing a new complaint in state court. Denying the motion with respect to the part of the district court's order imposing a leave-to-file sanction." (Appellate Doc 50) This Court's ruling, on the contrary to the trial Court's Decision, demonstrates a coherence of logic and clarity of thought: You District Court denied Plaintiff's Complaint on jurisdictional basis without addressing merits of the case. You then ban the Plaintiff from litigating the merits of the claim with other forum which may have jurisdiction appears inconsistent and illogical. Such a sharp finding deserves high acclaim.

Associates, for the purpose to sue these named appellees and having paid the latter $40,000.00 as the Retainer.

On or about February 15, 2019, his civil actions (702781/2019 with the New York Supreme Court, County of Queens), namely, Hai Dong Li, Zhong Wang, Shoudong Li, Index.: On Behalf Of Themselves And All Others Similarly Situated Against Alibaba Group Holding Ltd., Ant Financial Service Group, Ltd., Micro Financial Services Company, Ltd, Alipay Internet Technology Company, Ltd, Jack Yun Ma, Daniel Yong Zhang, Jungong Sun. sounds like a class action, was brought by his counsel King L. Wu, Esq.. On April 15, 2019, counsel for Alibaba and Jack Yun Ma wrote a letter to Mr. King L. Wu, requesting the latter immediately withdraw that Complaint with the Queens Supreme Court or facing sanctions. Under the threats, then counsel for Appellant filed a Notice to withdraw the Complaint unilaterally without joint stipulation with counsel for the Defendants, much less notifying the Appellant, then lead Plaintiff Haidong Li, because Mr. Wu argued in separate action that Mr. Haidong Li wanted to use the U.S. juridical systems as the platform to fight against Chinese communists.

After the short lived class action in Queens Supreme Court, Appellant Haidong Li, *pro se,* filed the underlined action on December 19, 2019, in which he initially named various other defendants as well as John Doe and Mary Roe defendants. (Trial Court Doc. 2. hereinafter "Doc.") App7 This undersigned counsel appeared on Li's behalf on January 23, 2020 and has been representing Li since then. (Doc. 5.) Alibaba filed a motion to dismiss and a motion for sanctions on February 18, 2020. (Docs. 10, 13.) By order dated February 19, 2020, Ithe District Court directed Li to file any amended complaint by March 4, 2020, (Doc. 16), and Li subsequently filed the First Amended Complaint (FAC), (Doc. 18), which only named as Defendants Alibaba and the previously-mentioned Does and Roes. On March 10, 2020, Alibaba filed a reply brief in support of its motion for sanctions. (Doc. 19.) The next day, Li filed a brief in opposition

to the motion for sanctions, (Doc. 21), which Alibaba moved to strike, (Doc. 22). On March 24, 2020, Alibaba moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), (Docs. 24–25), and, on April 8, 2020, Alibaba filed its reply brief in support, (Doc. 26), this undersigned counsel for Appellant slightly failed to timely file papers in opposition Alibaba's motion due to his being attacked by Covid19 syndrome. On that same day, Li's counsel moved for an "enlargement of time" on various grounds, including that he is "a solo practitioner . . . in self-therapy, self-recovering process to fight against Flu like syndrome in home and bed confinement under quarantine," (Doc 28)

On September 7, 2021, the lower court granted Defendants' Motion to dismiss and dismissed the Complaint for the following foremost reasons:

1. Due to the fact that Plaintiff failed to file timely opposition in response to Defendant's Motion to Dismiss, and Defendants' Motion for sanctions, even though Plaintiff filed untimely Opposition Brief together with Motion for Enlargement of Time to file responsive paper on health related reason, the Court did not find "good cause", therefore Plaintiff's Motion to extend filing deadline would not be granted and Plaintiffs' Opposition Brief in Response to Defendants' Motion to Dismiss the FAC was NOT heard or considered. (Doc 34, p7)* App 13 (Presiding Judge's such inflexible, stringent rule was selectively used upon the Plaintiff, rather than Defendants, because the trial court remained silent to Defendants' failure in meeting "meet and confer" prerequisite prior to their filing of Motion for Sanctions. )

2. The District Court dismissed the First Amended Complaint for want of subject matter jurisdiction because the lower court found Plaintiff had failed to establish "federal questions" while the Court ruled that the Federal Enactments, among them, Electronic Signatures in Global and National Commerce Act cited by the

Plaintiff did not grant the Plaintiff as a private litigant any private rights to sue Defendants*;

3. The Court found that even if Plaintiff adequately established subject matter jurisdiction, the case still failed because: a. Plaintiff failed to complete international service of process **; b. There was no, as the Defendants argued and it was blindly adopted by the trial court in absence of Plaintiff's opposition brief.***

_____

*"Li merely pleads, in conclusory fashion, that Defendants violated SOX by failing to make "earlier and more complete disclosure [sic] of information" and by their "fraudulent handling of documents." (Doc. 17 ¶ 151.) Such allegations are clearly deficient. Finally, Li provides no colorable basis for a claim under the E-Sign Act, a statute that says nothing about any private right of action, see 15 U.S.C. § 7001, . (Doc 34, pp9-10)

**Service issue could have been a big issue being raised by the Court, *sua sponte,* if timely. (Doc 34, p10) Trial Court ignored that all Defendants were given the actual and constructive Notice that they were being sued. See copy of the International Service completed by Florida Hague Convention Service. AA        Additionally, record shows that all named Defendants retained their defense counsels to enter into the case fighting back the Plaintiff without make a special appearance statement, i.e,, they assumed the Court's personal jurisdiction for the aspect of the international service, and the case was being processed by Defendants in full fledge. The trial Court also failed to make inquiry or request status report.

*** "Li has not pleaded any facts suggesting that "the exercise of personal jurisdiction comports with the due process clauses of the Fifth and Fourteenth Amendments," which would require some showing of Alibaba's "minimum contacts with the forum to justify the court's exercise of personal jurisdiction." Id. (internal quotation marks omitted). Li pleads no "suit-related conduct" with New York State or with the United States to warrant specific jurisdiction over Alibaba, Walden v. Fiore, 571 U.S. 277, 284 (2014), nor does he plead that Alibaba has "continuous and systematic" "affiliations" "to render [it] essentially at home in the forum State" to warrant general jurisdiction, Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)"

As matter of law, Federal courts have repeatedly applied Title VII's analogous "mixed-motive" or "motivating-factor" standard without ever suggesting that they might lack subject-matter jurisdiction to enforce it. See, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 173-74 (2009) (explaining that Title VII provides relief where "an improper consideration was a motivating factor for an adverse employment decision" even if "other factors also motivated the practice" (internal quotation marks omitted)); Ginger v. District of Columbia, 527 F.3d 1340, 1345 (D.C. Cir. 2008) (explaining that a plaintiff "may bring a mixed-motive case" under Title VII "in which he does not contest the bona fides of the employer's justifications but rather argues race was also a factor motivating the adverse action" (internal quotation marks omitted)).

## 7.  STANDARD OF JUDICIAL REVIEW

For this judicial circuit, the Court reviews *de novo* the district court's grant of defendants' motion to dismiss pursuant to Rule 12(b)(1). Corfield v. Dallas Glen Hills LLP, 355 F.3d 853, 857 (5th Cir. 2003)( An order granting a motion to dismiss for lack of subject-matter jurisdiction and dismissing a case is a final appealable order because it disposes of all parties and all claims. The reviewing court reviews a dismissal order de novo,..) Further, if the finding of want of subject matter jurisdiction is based upon factual findings, the Statandard of review on the District Court's factual finding is "Clear error". ("A district court's factual findings are clearly erroneous only if, after reviewing the record, [the reviewing court] is firmly convinced that a mistake has been made." using the same standards as the district court uses    ("We therefore review the district court's dismissal for lack of subject matter jurisdiction de novo.") *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). On a motion for summary dismissal, this Court construes the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true. *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001). "The standard of review applicable to district court decisions regarding subject matter

jurisdiction …is *de novo for legal conclusions."* U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., <u>241 F.3d 135</u>, 150-51 (<u>2d Cir. 2001</u>)- emphasis added- (citing Filetech S.A. v. Fr. Telecom S.A., <u>157 F.3d 922</u>, 930 (<u>2d Cir. 1998</u>)).

This Honorable Court reviews lower court's "grant of summary judgment de novo", "and in so doing, we construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. TRACY v. FRESHWATER 08-1769-cv. 2nd. Cir., 2010   See also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 427 (2d Cir.2009); Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir.2007). Summary judgment is warranted only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); see Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir.2009). "A fact is material when it might affect the outcome of the suit under governing law." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.2007) (internal quotation marks and citations omitted).

## 8.  **Arguments;**
### **8.1 Summary of Arguments**

The District's swinging position between offering and denying of the Plaintiff's Motion for Leave to file Complaint in other courts exposed its lack of clarity of thoughts and want of coherence of jurisprudence.

The Trial Court's such deficiency of ruling was tapped off by the Appellee's Motion for Summary Affirmance with this Court and caught by the Honorable Court in thid Court's Denial of the Motion.

As a threshold, the District Court's 09/07/2021 Decision which failed to clearly ruled whether the Dismissal of the 1st Amended Complaint (FAC) was a dismissal with prejudice, appears clearly deficient because it has failed to address any issues of merits of

the Complaint. The trial Court's 09/07/2021 Order granting Defendants motion to Dismiss under Rule 12 (b) (1), Rule 12 (b) (2), Rule 12 (b) (3) and Rule 12 (b) (6). (Doc 24, App 101 )   The Court's 09/07/2021 Decision failed to address, without a single word, to address any merit issues in Defendants' Rule 12(b) (6) Motion, much less Rule 12 (b) (3), issue of venue.   Therefore, the lower Court's 09/07/2022 decision is an incomplete, deficient ruling, it must be remanded for redisposition.

**Argument I: District Court's Failure to Address Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) Rendered The Court's Pre-Injunction Ban on Plaintiff's Having His Merits Heard in other Courts which Do have Jurisdiction**

Dismissing the Complaint by jurisdictional basis only. the lower Court's pre-injunction to ban the Plaintiffs from bringing any new action in any other courts worldwide or filing a further Amended Complaint in the same District Court is a reversible error, even if the trial Court finds its dismissal is with prejudice. "…*finding that state court's dismissal of action "with prejudice" did not bar subsequent action where court based its dismissal on mootness grounds); cf. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506 (2001) (holding that district court's dismissal "on the merits and with prejudice" on statute of limitations grounds barred refiling the same claim in the same court but did not bar refiling in a different court where a different statute of limitations applied…")*In the same light, this District Court's dismissal of the FAC on the jurisdictional basis, assuming *arguendo* its finding in lack of subject matter and personal jurisdiction were accurate, is not supposed to ban the Plaintiffs to file other actions in other courts if such other courts do have the jurisdiction. With this analogue alone, the District Court's 09/07/2021 Decision must be reversed and vacated, and the case must be remanded.

**Argument II: District Court Does Have Subject Matter Jurisdiction.   Even if it Does Not, The Dismissal Without Prejudice Addressing Rule 12(b)(1) issues Should Not be Attached with A Ban On Plaintiffs' Post-Dismissal Case Filing**

The triggering Motion brought by the Defendants in this underlying case is for dismissal of the FAC under Rule 12 (b )(1), lack of subject matter jurisdiction; App 88

Rule 12 (b )(2) lack of Personal Jurisdiction App 90 Rule 12 (b )(3), Venue Improper and Rule 12 (b )(6) Failure to State a Claim upon which Relief can be granted even in the most favorable light given to the non-moving party. App 101

    The District Court's 09/07/2021 Order and Memorandum Opinion limited its finding and ruling upon jurisdictional basis. In lack of holding addressing the merits of the case, assuming *arguendo*, the District Court's finding on the issues arising from Rule 12 (b )(1) and Rule 12 (b )(2) were correct, its final disposition denying the Plaintiff from having his merits of the claim heard by any other courts which do have jurisdiction over the merits, appears deficient and erroneous. This deficiency was sharply and wisely caught by this Honorable Court when it ruled (Doc 50) on Appellee's Motioon for Summary Affirmance (Doc 17) before this undersigned, was directed into the corrected direction to walk out of the jungle of the thought.

To throw out a Complaint merely based upon the Court's Finding of Jurisdictional Deficiency without addressing the case's Rule 12 (b )(6) should not be attached with any explicit or implicit bar to enjoin the Plaintiff to fix the jurisdictional deficiency, either by further amending his Complaint or finding other forum which do have both subject and personal jurisdiction.

    District Court Court's Subject matter jurisdiction refers to the tribunal's power to hear a case. Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67 (2009) Federal question jurisdiction exists when a plaintiff pleads a colorable claim "arising under" the Constitution or laws of the United States. Bell v. Hood, 327 U.S. 678, 681-85 (1946). Payne v. Progressive Financial Services, Inc., 748 F.3d 605, 608 (5th Cir. 2014) (Court is found to be "improper to use Rule 12(b)(1) to decide merits of the case because argument based on unaccepted offer of judgment rendering claim moot required merits determination of the damages to which plaintiff was entitled." Id.)

If the court lacks subject matter jurisdiction, it should dismiss *without prejudice*. In re Great Lakes Dredge & Dock Co., LLC, 624 F.3d 201, 209 (5th Cir. 2010); see also Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc., 544 Fed. Appx. 455 (5th Cir. 2013) emphasis added.

In this underlying case, the District Court, assuming arguendo its finding in lack of subject matter jurisdiction, were correct, even though it is not, dismiss the FAC with pre-injunction for the Plaintiffs to seek for judicial remedies against such an internationally infamous Defendants as Alibaba and Jack Yun Ma, and their subsidiaries, as a universal ban in future, is not just improper, but outrageous.    Such a going wild ruling may need to be remanded and vacated.

With no inquest and thorough investigation of the "Federal Questions" presented by the Plaintiffs in their FAC as the basis for subject matter jurisdiction, the District Court's ruling appears rough, baseless and unsophisticated:

Plaintiff's allegation on Defendants' violation of "SOX by failing to make "earlier and more complete disclosure [sic] of information" and by their "fraudulent handling of documents." Court concluded: "Such allegations are clearly deficient." App15. Deficiency in allegation may not be a sufficient grounds to deny "subject matter jurisdiction".    The finding of deficiency does not answer the question whether such Federal law is violated under the circumstances. The District Court's accusing Plaintiff's "deficiency" in alleging Defendants' SOX violation as the basis for lack of subject matter jurisdiction appears inappropriate. Court is found to be "improper to use Rule 12(b)(1) to decide merits of the case…" Payne v. Progressive Financial Services, Inc., 748 F.3d 605, 608 (5th Cir. 2014)

Plaintiff there in the underlined case pushed a cartful evidentiary materials addressing such nationally and internationally scandalous practice of Alibaba in commercial frauds victimizing millions of consumers in E-Commerce and E-Currency transactions by

Ali-pay worldwide.    No counsel need to bring all these facts into initial pleading paper. Because Rule 8 of the Federal Rules of Civil Procedures only requires "each allegation must be simple, **concise**, and direct".    If there is any deficiency in forming the factual basis of the claim, such deficiency may have ample chance to get supplemented through discovery process. Most importantly, the District Court invoked "deficiency in allegation" to attack the Complaint's jurisdictional basis.

The District Court's finding that Plaintiff's alleged "Federal E-Sign Act" violations couldn't become the jurisdictional basis appear even more confusing:

"Finally, Li provides no colorable basis for a claim under the E-Sign Act, a statute that *says nothing* about any private right of action, see 15 U.S.C. § 7001, . (Doc 34, pp9-10) Doc 15-16

The Federal eSign Act, namely, Federal Electronic Signatures in Global and National Commerce Act governs transaction of eCommerce in or *affecting interstate or foreign commerce* 15 USC 7001. The Act limit, alter, or otherwise affect any <u>requirement</u> imposed by a statute, regulation, or rule of law relating to the rights and obligations of <u>persons</u> under such statute, regulation, or rule of law other than a <u>requirement</u> that contracts or other <u>records</u> be written, signed, or in nonelectronic form;"

True, Federal E-Signature Act does not explicitly provide subject matter jurisdiction to U.S. District Court, yet the Federal Law created individual rights contractual transaction, for testimony and for raising a claim should the law in prevention of fraud in E-Commerce be violated.    15 USC 7001 "limit, alter, or otherwise *affect* any <u>requirement</u> imposed by a statute, regulation, or rule of law relating to *the rights and obligations of **persons** under such statute, regulation, or rule of law other than* a <u>requirement</u> that *contracts or other <u>records</u> be written, signed, or in non-electronic form*;" Emphasis added.

The term ''transaction'' means an action or set of actions relating to the conduct of business, *consumer, or commercial affairs between two or more persons* transaction in or *affecting interstate or foreign commerce*— (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

The Federal E-Sign Act was also made to protect the interests of the consumers, such as this Appellant, in the E-Commerce transaction with the scandalous Appellees. Therefore, the Federal Law provides:        '' (ii) informing the consumer of whether the consent applies (I) only to the particular transaction which gave rise to *the obligation* to provide the record, or (II) to identified categories of records that may be provided or made *available during the course of the parties' relationship*;'' Emphasis added.

Chapter (13) of the Act provides    the definition of the consumers in e-Commerce transaction: "The term ''transaction'' means an action or set of actions relating to the conduct of business*, consumer, or commercial affairs between two or more persons*, including any of the following types of conduct— *(A) the sale, lease, exchange, licensing, or other disposition of (i) personal property, including goods and intangibles, (ii) services, and (iii) any combination thereof;* " **emphasis added.**
In the underlined case, the Trial Court completely ignored that the Defendants violation by cheating, frauds, making false advertisement, alleged failures to perform their obligation in bad faith, including squandering Plaintiffs' cash deposits in Defendants eSigned accounts with AliPay, subsidiary of principal Defendant Alibaba, in such eCommerce transaction eSigned between the Parties, is certainly a violation of Federal E-Sign Act.

The eSign Act certainly creates personal rights, obligations to sue and to be sued:    It explicitly "Permit parties to a transaction to determine the appropriate authentication technologies and implementation models for their transactions, with assurance that those technologies and implementation models will be *recognized and enforced.* (C) *Permit parties to a transaction to have the opportunity to prove **in court** or other proceedings that their authentication approaches and their transactions are valid.*"

The underlined 28 USC 1391 Federal Question Action may have involved broad based federal laws and regulations which offered the subject matter jurisdiction to the U.S. District Court, particularly regarding the Defendants' illegal expansion of their aggressive invasion and infiltration corrupting the Ecommerce/eFinance by RMB to overthrow the US dollar system. Plaintiffs in the instant case being victimized is not an isolated case. Federal law and even Federal law enforcement should have involved in such a mushrooming circumstances. In a closely related Federal Enactment: "Fair Credit Reporting Act, 15 U.S.C. § 1681n(a)" which specifically provides the Federal District Court 's subject matter jurisdiction, which provides, *inter allia*: (a) In general. Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of— (1) (A) any actual damages sustained by the consumer as a result of the 4 failure or damages of not less than $100 and not more than $1,000; or (B) in the case of liability *of a natural person* for obtaining a consumer report under *false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000*, whichever is greater; (2) *such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability* under this section, the costs of the action together with reasonable attorney's fees as determined by the court." Emphasis added

Under the normal circumstances, Plaintiffs in the underlined case should be allowed to file the Leave of the Court to file 2nd Amended Complaint after the Court's dismissal of the FAC without prejudice, hence to be permitted to supplement or amend their Complaint by broadening its Federal Question basis to sustain the Complaint's jurisdictional basis, unless, until the Court dismiss the Complaint by merits pursuant to Rule 12(b)(6).

**Dismissals under FRCP 12(b)(1) are "not a decision on the merits and therefore should be without prejudice." See, e.g., Montgomery v. Comey, 752 Fed. App'x 3, 5 (D.C. Cir. 2019). As to this domestic and international eCommerce controversy claims, even "'dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint.'" O'Donnell v. Barry, 148 F.3d 1126, n.3 (D.C. Cir. 1998) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).**

**Argument III: District Court Does Have Personal Jurisdiction.    Even if it Does Not, The Dismissal Without Prejudice Addressing Rule 12(b)(2) Issues Should Not be Attached with A Ban On Plaintiffs' Post-Dismissal Case Filing**

The frivolity and absurdity of the lower Court's perception of its 09/07/2021 Order of Dismissal is that this District Court not only took the dismissal as an final disposition with prejudice for this instant case alone, it took that dismissal as the final and global resolution to lend a permanent peace of mind to such an eCommerce, e-Banking ugly claw of the aggressive Chinese totalitarianism as Alibaba and Jack Yun Ma in suppression of outspoken protesters as Plaintiffs.

The mere legal basis: Denial of Defendants business contacts, situs, nexus in the forum state by Defedants' fraud or willful misrepresentation*.    On such an erroneous finding being fraudulently misled, misinformed and misguided by the Defendants and

their high roller counsels, the District Court ruled: 1st Amended Complaint (FAC) is dismissed with post dismissal ban of filing in any courts, probably through out the world, at any time against Alibaba and its related affiliates. Though the Court seemed left a window slightly ajar, allowing the Plaintiffs to file Motion for a Leave of the Court to avoid likely steep hefty monetary sanctions in favor of that CCP handled trillionaire, followed with an immediate closure of that window. Doing so, the District Court simply ignored a tiny technical issue: Dismissal of a Complaint for want of personal jurisdiction under Rule 12 (b) (2) is normally a dismissal without prejudicial. Such a dismissal would allow Plaintiffs to file Amended Complaint afterwards.

Dismissal for lack of personal jurisdiction under Rule 12(b)(2) is a dismissal without prejudice, not with prejudice, because it is not a judgment on the merits. Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 623 n.2 (5th Cir. 1999). Personal jurisdiction is an essential element of the jurisdiction of a court, without which the court is powerless to proceed to an adjudication. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999). A court must have both subject matter and personal jurisdiction before determining the validity of a claim. Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994). Lack of personal jurisdiction objection may be waived if not properly raised in a Rule 12(b) motion. FED. R. CIV. P. 12(h)(1).

---

\* In support of the Alibaba Fraud upon the Court, Defendants presented to the District Court with a fraudulent testimony totally denying Alibaba's business contacts in forum State, issued by Ho Lok Che, the Head of International Dispute Resolution for the Alibaba Group, based in Hong Kong: "Alibaba Group Holding Limited is not registered to conduct business in the United States and neither directs nor specifically tailors any of its business activities to individuals or businesses in the United States. App 72-74 (albeit Plaintiff's fraudulent testimony, concrete evidence of Alibaba's physical presence in 7000(!) Walgreen chains, Walgreen alone, including many in New York-added) App 75 Alibaba's only contacts with the United States are that it is listed on the New York Stock Exchange under the ticker "BABA" and that it has an agent for service of process in New York, solely for securities litigation arising from that listing." See App 73

Here the key issue is whether Defendant Alibaba's active nexus with the situs of the forum have met the minimum contact for the Court to exercise personal jurisdiction. Here, we have one of the world's greatest tycoons of the eCommerce, and most significantly, an RMB, not US Dollar, based eBanking systems herein the United States, specifically, in the State of New York. Normally, to analyze an eCommerce transaction and eBanking business, we don't have to rely on any physical contacts, such as the tangible shops, or any tangible and physical existence, like billboards, paper trails, kiosks, warehouses, etc. Advertisement by the Defendants reaching customers in the State of New York may be sufficient to establish such bisiness contacts between the Defendants and the forum state.    In this instant case, Plaintiff found, and submitted as overwhelming physical evidence, that Defendants' business contact finds its physical, and tangible mechanism in the forum state of New York: Alipay's Exclusive Credit Card Machines scattering all over the New York grocery store chains such as Walgreens, Walmart, Restaurants, Travel agencies, and bars. Many of these New York shops and business places used AliPay Machines, at the exiting cashiers count. With these over-flooded AliPay machine, representing the Defendants eBanking systems, quickly growing through out the State of New York and the whole nation as well, through which, Consumers use Chinese currency, namely, RMB, to pay their merchandize.    The AliPay debiting machines are themselves are the integral part of Defendant Alibaba's physical/tangible beings in and out of the State of New York.    These machines, given to its functions to take RMBs, rather than U.S. dollars, as the legal tenders, its identity should prove they are exclusively designed and provided from the Defendants company and operating on behalf of the Defendant Alibaba, via its eBanking arm, AliPay. (See App 79/80)    All these small machine furnished by Ali Group under Mr. Jack Yun Ma has been expanding the RMB as an invasive legal tender from America's hostile foreign power to derail, bit by bit, the US currency as the domestic and international legal tender.

Even if these AliPay RMB banking machines were not taken into account, business contacts between Defendants and the State of New York still exists.

In the foregoing light, our eyes may be opened to see what Defendants' argued and the District Court take it for true that Alibaba does not have business transactions inside the United States, all Defendants business transactions happened outside the United States (Doc 34) App 7-21

In the foregoing, the fact and evidentiary pattern shows that Defendants Alibaba and its branch companies do have business nexus with physical, tangible presence in the State of New York.   Defendants' willful misrepresentation to the Court that Alibaba and its likes only transacted business outside the territory of the United States, knowing it is untrue, appears fraudulent. Assuming arguendo that Defendants/Appellees' denial of the business contacts in the forum state were true, trial Court's dismissal of the FAC based upon lack of personal jurisdiction should be a dismissal without prejudice. A Court which rendered a dismissal without prejudice should allow Plaintiffs to leave of the court to file amended complaint. In this light, the District Court's pre-injunction to bar Plaintiff to file any action in any court at any time against the same group of Defendants and their variants App 13-14 are a reversible error.

## IV. Personal Jurisdiction in E-Commerce Environment

Defendants/Appellees' argument to persuade the District Court to throw out the Complaint by denying any business transaction inside the United States has also been smashed into pieces when we examine today's eCommerce reality.    In today's growing eCommerce transaction world, place of business transactions may have been changed.

"It is increasingly clear that modern businesses no longer require an actual physical presence in a state in order to engage in commercial activity there. With the advent of 'e-commerce,' businesses may set up shop, so to speak, without ever actually setting foot

in the state where they intend to sell their wares ... Businesses who structure their activities to take full advantage of the opportunities that virtual commerce offers can reasonably anticipate that these same activities will potentially subject them to suit in the locales they have targeted."[1]  *L.L. Bean v. Gator.Com*, 2003 DJDAR 10023 (9th Cir. 2003).

According to a January 2004 estimate, U.S. online sales were anticipated to reach $65 billion by the end of 2004, with growth expected to continue at a compound annual rate of 17% through 2008 to $230 billion. This study also estimated that online growth in the United States was expected to increase 14% in 2005 This figure is equivalent to 30% of the U.S. population. Many believe that by 2008, approximately one-half of the U.S. population will make at least one online purchase a year.

Online purchases are rapidly becoming a preferred means of shopping. While presently not on par with traditional brick-and-mortar establishments, in the not-so-distant future, online retail sales may surpass sales from the more traditional retail methods. Additionally, online retailing in the United States is a multibillion-dollar industry where an unsuspecting online retailer could face jurisdictional issues in all 50 states. Therefore, it is increasingly important for online merchants and retailers to understand the basics of U.S. jurisdiction before embarking on an E-Commerce venture.

Personal jurisdiction is the power of a court to adjudicate the personal legal rights of parties properly brought before it. *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945) Due process of law *requires that a defendant voluntarily appear or be served with process* before the defendant can be personally bound by the court's jurisdiction. Id.

To establish personal jurisdiction over a nonresident defendant, the plaintiff must satisfy both constitutional due process requirements and the requirements of the given state's longarm statute. Many state longarm statutes authorize a court to exercise

jurisdiction over a nonresident defendant on any basis not inconsistent with the U.S. Constitution or the state constitution. *See, Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 404 (9th Cir. 1997) (Arizona longarm statute); *L.L.* Bean *v. Gator.Com*, 2003 DJDAR 10023 (California longarm statute); McGill *Technology Ltd. v. Gourmet Technologies, Incl,*300 F.Supp.2d 501 (E.D. Mich. 2004) (Michigan longarm statute); *Mink v. AAAA Development LLC.,* 190 F.3d 333 (5th Cir. 1999) (Texas longarm statute). Accordingly, jurisdiction over a nonresident defendant satisfies the constitutional requirements if the defendant has sufficient "minimum contacts" with the state, such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945).

Once the court determines that there are sufficient "minimum contacts" with the forum state, a defendant then becomes subject to either the specific or general jurisdiction of the court. *See, Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408 (1984).

In this instant case, Appellant/Plaintiff presented concrete evidence to the District Court that Appellees/Defendants had extensive business contacts in virtual commerce in the State of New York, ranging from its Advertisement to formation/performance of transaction contracts in the State of New York. App

The benchmark case dealing with Internet jurisdiction is *Zippo Manufacturing v. Zippo Dot Com,* 952 F. Supp.2d 1119 (W.D. Pa. 1997). In order to understand the rationale used by the court in determining the appropriateness of asserting personal jurisdiction over an out-of-state defendant based primarily on Internet contacts, it is helpful to look at the facts surrounding the *Zippo* case. Zippo Manufacturing is a Pennsylvania corporation that manufactures, among other things, "Zippo" lighters. Zippo Manufacturing holds the

trademark on the name "ZIPPO." Zippo Dot Com Inc. is a California corporation that operates a Web site and an Internet news service, and held the rights to the domain names ZIPPO.COM, ZIPPO.NET and ZIPPONEWS.COM. *Zippo v. Zippo Dot Com,* 952 F.Supp.2d 1119 (W.D. Pa. 1997) Zippo Manufacturing brought suit against Zippo Dot Com, alleging that it had violated the Federal Trademark Act and various other Pennsylvania state intellectual property laws. Zippo Dot Com moved to dismiss the action on the grounds that the court lacked personal jurisdiction.

In analyzing personal jurisdiction, the court noted that Zippo Dot *Com's contacts with Pennsylvania occurred almost exclusively over the Internet*. The court found *that Zippo Dot Com had no offices, employees or agents in the state* of Pennsylvania.  The only advertising conducted by Zippo Dot Com involved information posted on its Web page. Of its approximately 140,000 subscribers, approximately 2 percent were Pennsylvania residents.  Finally, the court found that Zippo Dot Com had entered into agreements with seven Internet service providers to permit their subscribers access to the news service. Two of the seven subscribers were located in the Western District of Pennsylvania. There as here, Alibaba sell its products to New York residents mostly via the internet. Moreover, its E-Banking Service by AliPay had at least contractual relations with such New York Supermarket "Walgreen", the hard evidence we caught, leaving AliPay's physical presence, Alibaba's debit card machine inside Walgreens and other shops in New York, for Alibaba's business counterparts to transact business using RMBs as the legal tenders in the State of New York.

The court then went on to analyze whether these contacts, again primarily Internet-based, supported a finding of "minimum contacts," such that the assertion of personal jurisdiction was proper. The court found that the Internet made it possible to conduct business throughout the world entirely from a desktop. Because of the way the Internet is changing

the nature of commerce, the court determined that a new rule was necessary to evaluate "minimum contacts" over the Internet. The court ruled that the "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. The court went on to find that "at one end of the spectrum are situations where a defendant clearly does business over the Internet. . . at the opposite end are situations where a defendant has simply posted information on an Internet Web site [that] is accessible to users in foreign jurisdictions." Id.

Accordingly, the court developed a sliding scale to determine personal jurisdiction over nonresident defendants. At the extreme end, a Web site that is fully interactive and acts as a virtual storefront suggests that jurisdiction *will almost always be proper.* At the other end, a completely passive Web site that simply provides information to the end user, without any opportunity for interaction with the site owner, suggests the contacts will likely never be sufficient for a finding of jurisdiction. For cases in the middle of the spectrum, (i.e., where the user just exchanges information with the Web site), the court found that "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id.

Response to Zippo precedent varied among Circuits.   There is no uniformity regarding "minimum contacts" to exercise personal jurisdiction under the virtual commerce circumstances.

Within the 2nd Circuit, there appears district split in adopting or rejecting Zippo doctrine. This instant case may provide an opportunity for this Honorable Circuit to provide a uniform standard for the district courts to follow.

In a trademark infringement action brought by a New York corporation against a Georgia corporation, the defendant argued that mere publication of a page on the Internet, without more, was insufficient to demonstrate that it purposefully availed itself of conducting business in New York. In finding to the contrary, the court noted that the defendant had additional contacts with New York in that it had signed up six New York subscribers to the services advertised on its home page. The service agreements with those subscribers required the defendant to mail software packages and agreements to those New York subscribers. Additionally, the court noted that the defendant received a total of $150 per month from those subscribers, thus enabling the defendant to avail itself of a commercial benefit in New York. Therefore, minimum contacts are satisfied. *American Network Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp. 494 (S.D.N.Y. 1997)

Earlier, the same Court rejected Zippo doctrine in a similar circumstances: "[c]reating a site, like placing a product into the stream of commerce, may be felt nationwide – or even worldwide – but, without more, it is not an act purposefully directed toward the forum state." Because the plaintiff failed to allege that defendant actively sought to encourage New York residents to access his Web site, exercise of personal jurisdiction was improper. *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996). "Without more"? That "more" does exist in this instant case, as we found and analyzed the Alibaba's physical presence of its "e-Banking" service by placing AlPay machines in New York Walgreen supermarket Chain to transact business by Chinese currency RMB as the legal tender to derail the predominance of the US Dollars as of the legal tender.

Also within this judicial circuit, in support of its finding that exercise of specific jurisdiction was proper, the court held that the defendant had purposefully availed itself of the privilege of doing business in Connecticut by directing its advertising activities via the

Internet and its toll-free number "toward not only the state of Connecticut, but *to all states*. The Internet, as well as the toll-free numbers, are designed to communicate with people and their businesses in every state." . *Inset Systems Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D. Conn. 1996)The court also noted that advertisements on the Internet can not only reach as many as 10,000 Internet users in Connecticut alone, but that once posted on the Internet, such advertisements are continuously available to any individual using the Internet. Id.

**Argument V. District Court's Refusal to Consider Plaintiff's Opposition Memorandum In Connection to Issuance of a Universal Ban for Further Efforts to Seek for Justice May Have Violated Plaintiff's Due Process Rights**

In this instant case, the fact that the District Court unreasonably imposed a ban prohibiting Plaintiff Haidong Li to file any action in any court, including filing a 2nd Amended Complaint with the same Court or Renew or Reopen his suspended legal action with the New York Supreme Court took place under the circumstances that the trial Court made such ruling merely based upon hearing Defendants' one-party monologue pleading (Doc 24) rejecting to hear the non-moving party's opposition voice:

> "As an initial matter, because Li did not timely file papers opposing any of Defendants' motions and supporting papers, I need not consider the untimely opposition papers he did eventually file." See, e.g., Feltzin v. Stone Equities, LLC, CV 16-6457 (SJF) (AKT), 2018 WL 1115135, at *7 (E.D.N.Y. Feb. 8, 2018)" . (Doc 34, p7)

The trial Court's rejection to consider Plaintiff's Opposition Memorandum filed outside the timeframe and its rejection to consider Plaintiff's "good cause" plea to postpone the filing deadline occurred during the peak time of devastating pandemic period.   It does not appear much humanitarian or compassionate. On May 12, 13, and 14, 2020, Appellant, by this undersigned counsel, filed papers, *nunc pro tunc,* in

opposition to the motion to dismiss the FAC. (Docs. 29–33.) These paper were rejected to be "considered" by the Court while resting on the Judge's Desk for a prolonged 4-month period.

> "Upon motion made, Rule 6(b)(1)(B) permits a post-deadline filing extension "for good cause," if the party failed to act because of "excusable neglect*." Lujon v. Nat'l Wildlife Fed'n*, 498 U.S. 871, 896 (1990). Excusable neglect requires "a demonstration of good faith ... and some reasonable basis for noncompliance within the specified period of time." *Kimberg v. Univ. of Scranton*, 411 Fed. Appox. 473, 477 (3rd Cir. 2010) (quoting *Petrocelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3rd Cir. 1995).
>
> Almost in all Judicial Circuits, as part of American legal culture, health or medical

related reason has been generally accepted as "good cause " for delay or for excusable neglect even without devastating pandemic threats.   When such a missing opposition brief deadline occurred during the most dangerous, life threatening period of the devastating Covid19 Pandemic attacks while almost all courts through out the nation were half-closed. To bite upon Appellant's slight delay being caused by his counsel's bed-ridden disease does not appear reasonable. Apparently, it is a due process violation. In this nation, the notion of an even handed fair trial has been long established and has received public confidence in our Federal Judicial system:

> Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. "Thus, where a litigant had the benefit of a full and fair trial in the state courts, and his rights are measured, not by laws made to affect him individually, but by general provisions of law applicable to all those in like condition, he is not deprived of property without due process of law, even if he can be regarded as deprived of his property by an adverse result." Marchant v. Pennsylvania R.R., 153 U.S. 380, 386 (1894). See also Hagar v. Reclamation Dist., 111 U.S. 701, 708 (1884).

> Further: "Due process of law is [process which], following the forms of law, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by law; it must be adapted to the end to be attained; and whenever necessary to the protection of the parties, it must give them an opportunity

to be heard respecting the justice of the judgment sought. Any legal proceeding enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, which regards and preserves these principles of liberty and justice, must be held to be due process of law." Id. at 708; Accord, Hurtado v. California, 110 U.S. 516, 537 (1884). See also Medina v. California 505 U.S. 437, 443 (1992).

The District Court's refusal to consider Plaintiff's Opposition Brief filed behind the original deadline under the health crises stipulated in Plaintiff counsel's Motion for Extension of Time appears a rejection to give the Plaintiff a due process hearing even-handedly, which resulted in prejudice to Plaintiff, leading to Plaintiff's FAC improperly dismissed followed with an unreasonable, much too restrictive ban on refiling.

The District Court's 09/07/2021 Decision of Dismissal with Pre-injunction must be reversed and vacated, for violation of procedural due process under 5th Amendment as well.    .

### 9. CONCLUSION

District Court's 09/07/2021 Decision appear so obvious and fatal, the case may need to be reversed and remanded.

"A Rule 12(b)(1) dismissal for lack of jurisdiction generally is not a decision on the merits and therefore should be without prejudice." Montgomery v. Comey, 752 F. App'x 3, 5 (D.C. Cir. 2019) (per curiam). So is the Rule 12(b)(2) dismissal. Any further restrictions imposed by the District Court following its erroneous ruling on jurisdictional dismissal should be reversed and vacated.

Wherefore, in the foregoing light, the case may need to be remanded to the District Court for proper disposition of all these valid issues.

With no opposition from the Opponents, Appellant Haidong Li respectfully prays that this honorable Court schedule an Oral Argument for these interesting legal issues which may likely call for uniformity to clear district split, or circuits split.

Respectfully submitted,

_____

/s/Ning Ye, Esq., Counsel for the Appellant
135-11 38th Avenue, Suite 1A, Flushing, NY 11354
Telephone: 718-308-6626; Facsimile: 718-228-5816
Email: yeningusa@gmail.com

Certificate of Compliance*

This undersigned hereby certifies on this 12th day of May, 2022, he completed the Opening Brief, by 37 pages. Consequently, the format of the Petitioner's Brief has been in full compliance with the type-set, Times New Roman 14, double spaced, and word format, with word count of 10853 words (including cover, all tables, all Certifications and footnotes) well under the statutory ceiling of 14000 words pursuant to FRAP32（a）(7)（b）and ( c) as well as Local Rules of this Honorable Court. The undersigned further certifies that the Scanned Appendix, in cleaned, enhanced and text searchable PDF Format, attached to this Opening Brief separately with ECF Broadcasting system.

_____

/s/Ning Ye, Esq.


Certificate of Service

This undersigned hereby certifies on this 12th day of May, 2022, this undersigned has caused to re-serve a copy of this Opening Brief upon Respondent's counsel via the Clerk's ECF broadcasting systems.

_____

/s/Ning Ye, Esq.

_____

*This undersigned counsel has received the Hon. Court's Notice of Corrections and humbly expresses his apology for absent-minded mistake in failure to weed out misspelling of the year (erroneous "22-2525" instead of "21-2525") on the top of the Cover. Corrected Covers in paper, six for each, was mailed to the Court via USPS on this 14th Day of June, 2022.